IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Gzim Selmani, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 20-cv-2097 |
| | ) |
| Village of Bartlett, et al., | ) |
| | ) |
| Defendants. | ) |

Memorandum Opinion and Order

Plaintiff Gzim Selmani, a police officer employed by the Village of Bartlett Police Department, brings this action against Defendants—the Village of Bartlett (the "Village"), the Village President, and several Bartlett Police Department officials—seeking damages stemming from the Village's decision to put Mr. Selmani on unpaid medical leave in 2019 after psychological symptoms caused by a 2014 training incident intensified. Defendants move to dismiss Mr. Selmani's eight-count complaint in its entirety [22]. For the reasons that follow, Defendants' motion is granted.

I.

In reviewing the sufficiency of a complaint pursuant to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6),

I "accept all well pled facts as true and draw all permissible inferences in favor of the plaintiff." *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 334 (7th Cir. 2012). To survive a motion to dismiss, the complaint must state a claim "that is plausible on its face" after conclusory allegations are disregarded. *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)).

Mr. Selmani was hired as a police officer by the Village of Bartlett Police Department in September 2012. In August 2014, he accepted an assignment as a member of the Specialized Police Emergency Action Response ("SPEAR") team. Following a SPEAR team training exercise on August 11, 2014, after Mr. Selmani had removed his protective equipment, Mr. Selmani's team members, including several of the defendants, instructed Mr. Selmani to re-enter the training room and then fired thirty to fifty rounds of simulated ammunition from their AR-15 rifles at Mr. Selmani at close range. As a result of this incident, which Mr. Selmani characterizes as "hazing," Mr. Selmani suffered both physical and emotional injuries. He alleges that he "struggled for years from recurring and disturbing nightmares and flashbacks of the traumatic event." R. 1 ¶ 23.

Mr. Selmani resigned from the SPEAR team in 2017, and ultimately reported the incident to his employer in early 2019.

2

He sought counseling at that time, and as a result, he was eventually diagnosed with Post-Traumatic Stress Disorder ("PTSD") and other psychological disorders. In February 2019, Mr. Selmani requested that he be put on paid leave. Instead, purportedly without explanation, the Village placed Mr. Selmani on unpaid leave in May 2019 and subsequently ceased providing employee benefits such as health care. Mr. Selmani complains that he is entitled to a year of salary and other benefits under the Public Employee Disability Act ("PEDA"), 5 Ill. Comp. Stat. 345/1, but that the Village did not initially inform Mr. Selmani that he was eligible for those benefits, and then denied his application for reasons of timeliness and process.

Mr. Selmani's complaint asserts eight causes of action, including both federal claims pursuant to 42 U.S.C. § 1983 and state-law claims. Defendants move to dismiss the complaint in its entirety. I consider each claim in turn.

## II.

In Count I, Mr. Selmani brings a claim for due process violations pursuant to 42 U.S.C. § 1983. Specifically, he claims that he was deprived of due process when he was placed on unpaid leave without a pre-decision hearing or other opportunity to be heard.

Due process claims such as Mr. Selmani's present two "basic legal questions": "(1) is there a property or liberty interest

3

protected by due process; and (2) if so, what process is due, and when must that process be made available?" *Bradley v. Vill. of Univ. Park*, 929 F.3d 875, 882 (7th Cir. 2019) (citing *Simpson v. Brown County*, 860 F.3d 1001, 1006 (7th Cir. 2017)). "The basic characteristic of a property interest is the continued flow of benefits, which may not be interrupted without an opportunity to be heard." *Ceko v. Martin*, 753 F. Supp. 1418, 1423 (N.D. Ill. 1990). "For public employees, a 'protected property interest in employment can arise from a state statute, regulation, municipal ordinance, or an express or implied contract.'" *Bradley*, 929 F.3d at 882 (citing *Crull v. Sunderman*, 384 F.3d 453, 460 (7th Cir. 2004)).

Mr. Selmani's claim falters because he fails to allege a protected property interest in his employment. In his complaint, Mr. Selmani contends that the property interest arises from the collective bargaining agreement ("CBA") that was in effect at the time, which he alleges provided that an officer "could not suffer suspensions or terminations without prior written notification and except for cause." R. 1 ¶ 63. Defendants attached the applicable CBA to their motion to dismiss,[1] however, and it does not provide

---

[1] I may consider the CBA because it is central to Mr. Selmani's claim and referred to in the complaint. *See Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.").

4

as Mr. Selmani alleges. Section 13.5, which governs leave for illness or injury, provides only that "the Village may grant a leave of absence without pay" after the employee submits a written application for leave and provides other relevant information. R. 22-2 at 19. It does not provide that the Village may grant unpaid medical leave only for cause or after providing notice and an opportunity to be heard.

In his reply brief, Mr. Selmani cites authority in which courts found that police officers had a property interest in their continued employment under 65 Ill. Comp. Stat. 5/10-1-18. *See, e.g.*, *Ceko*, 753 F. Supp. at 1422. That statute provides, in relevant part:

> No officer or employee of a police or fire department in the classified civil service of any municipality having 500,000 or fewer inhabitants who is appointed under the rules and after examination, may be removed or discharged, or suspended for a period of more than 5 calendar days, except for cause upon written charges and after an opportunity to be heard in his own defense.

65 Ill. Comp. Stat. 5/10-1-18(b). Even setting aside that Mr. Selmani did not allege in the complaint that this statute created the property interest in question, Mr. Selmani does not allege sufficient facts to establish that this provision applies to him. Mr. Selmani has not alleged, for example, that he is properly

5

considered a "classified civil servant" or that he was "appointed under the rules and after examination."

Accordingly, I conclude that Mr. Selmani has not alleged that he had a property interest in his continued employment, and I dismiss Count I without prejudice.

III.

Mr. Selmani next brings a claim for First Amendment retaliation pursuant to 42 U.S.C. § 1983. Specifically, he alleges in Count II that he was retaliated against after engaging in speech protected by the First Amendment—namely, reporting the misconduct of the SPEAR team members, reporting the injuries he sustained, and requesting pension and PEDA benefits to compensate him for his injuries.

To state a claim for First Amendment retaliation, a plaintiff must establish that he spoke (1) as a citizen (2) on a matter of public concern. *Kubiak v. City of Chicago*, 810 F.3d 476, 481 (7th Cir. 2016). "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). "Determining the official duties of a public employee requires a practical inquiry into what duties the employee is expected to perform, and is not limited to the formal job description." *Kubiak*, 810 F.3d at 481 (citing

6

*Houskins v. Sheahan*, 549 F.3d 480, 490 (7th Cir. 2008)). Whether speech is protected under the First Amendment is a question of law. *Id.*

Defendants argue that Mr. Selmani's claim fails as a matter of law because he was not speaking as a private citizen, but rather within the scope of his official duties. I agree. Generally, an employee is expected to report his colleagues' inappropriate behavior to a supervisor. *See id.* at 481–82. "[I]t makes even more sense to expect [police] officers to report that a fellow officer acted violently [because officers are] responsible for protecting the public from harm." *Id.* at 482. Accordingly, the Seventh Circuit has repeatedly held that police officers' internal reports of fellow officers' misconduct do not qualify as citizen speech for purposes of the First Amendment. *See id.* at 482 (police officer's internal report that she had been verbally assaulted by fellow officer was not protected speech); *Roake v. Forest Preserve Dist.*, 849 F.3d 342, 346–47 (7th Cir. 2017) (officer's two internal reports of officer misconduct were made within scope of official duties).

Here, the speech at issue solely involves internal reporting of officer misconduct—either in isolation or in order to establish Mr. Selmani's eligibility for benefits. Because Mr. Selmani's internal reports regarding the SPEAR team incident are not citizen speech, his First Amendment retaliation claim is dismissed.

7

IV.

In Count III, Mr. Selmani brings a *Monell* claim under 42 U.S.C. § 1983. *Monell* stands for the proposition that "[w]hile a municipality is not vicariously liable under § 1983 for the acts of its employees, a constitutional deprivation may be attributable to a municipality 'when execution of a government's policy or custom . . . inflicts the injury.'" *Montano v. City of Chicago*, 535 F.3d 558, 570 (7th Cir. 2008) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). In order to maintain a *Monell* claim against a municipality, a plaintiff must establish either "(1) an express policy that, when enforced, causes a constitutional deprivation; or (2) that the constitutional injury was caused by a person with final policymaking authority." *Id.* (citing *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002)).

Accordingly, *Monell* liability and the constitutional claims asserted by Mr. Selmani are intertwined. In order to prevail against the Village as a defendant under Counts I or II of the complaint, Mr. Selmani would have had to satisfy *Monell*. Conversely, to prevail on a *Monell* claim, Mr. Selmani must establish an underlying constitutional deprivation such as those asserted in Counts I and II. *See Houskins*, 549 F.3d at 493–94 (*Monell* claim failed where plaintiff did not "establish that she was deprived of a constitutional right"); *King v. East St. Louis School Dist. 189*, 496 F.3d 812, 817 (7th Cir. 2007) ("It is well

8

established that there can be no municipal liability based on an official policy under *Monell* if the policy did not result in a violation of [the plaintiff's] constitutional rights.").

The constitutional violations underlying Mr. Selmani's *Monell* claim appear identical to those asserted in Counts I and II—namely, denial of due process and First-Amendment retaliation. *See* R. 1 ¶ 84 (denial of benefits "deprived Plaintiff of his rights under the law and was handled in such a manner . . . in order to retaliate against Plaintiff for having reported police misconduct and having sustained a mental injury as a result of said conduct"); *see also* R. 27 at 15. However, as described above, Mr. Selmani has not plausibly alleged due-process or First-Amendment constitutional violations. Because there is no underlying constitutional deprivation, I dismiss Mr. Selmani's *Monell* claim.

V.

The remaining five claims asserted by Mr. Selmani arise under Illinois law. *See* R. 1 ¶¶ 90–135. Having determined that Mr. Selmani fails to state a federal claim, I decline to exercise supplemental jurisdiction over the remaining claims. *See* 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."); *Burritt v. Ditlefsen*, 807 F.3d 239, 252 (7th Cir. 2015) ("[O]nly in 'unusual cases' may a district court exercise

9

its discretion to assert its supplemental jurisdiction [after dismissal of federal claims] based upon the balance of factors of 'judicial economy, convenience, fairness and comity'"); *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999) ("[I]t is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial."). Accordingly, Counts IV-VIII are dismissed without prejudice.

VI.

For the foregoing reasons, Defendants' motion to dismiss [22] is granted.

ENTER ORDER:

**Elaine E. Bucklo**
United States District Judge

Dated: September 17, 2020