IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Gzim Selmani, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 20-cv-2097 |
| | ) |
| Village of Bartlett, et al., | ) |
| | ) |
| Defendants. | ) |

Memorandum Opinion and Order

Plaintiff Gzim Selmani, a police officer employed by the Village of Bartlett Police Department, brings this action against Defendants—the Village of Bartlett (the "Village"), the Village President, and several Bartlett Police Department officials—seeking damages stemming from the Village's decision to put Mr. Selmani on unpaid medical leave in 2019 after psychological symptoms caused by a 2014 training incident intensified. Defendants move to dismiss Mr. Selmani's six-count Amended Complaint in its entirety [44]. For the reasons that follow, Defendants' motion is granted in part and denied in part.

I.

In reviewing the sufficiency of a complaint pursuant to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6),

I "accept all well pled facts as true and draw all permissible inferences in favor of the plaintiff." *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 334 (7th Cir. 2012). To survive a motion to dismiss, the complaint must state a claim "that is plausible on its face" after conclusory allegations are disregarded. *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)).

Mr. Selmani was hired as a police officer by the Village of Bartlett Police Department in September 2012. In August 2014, he accepted an assignment as a member of the Specialized Police Emergency Action Response ("SPEAR") team. Mr. Selmani took part in a SPEAR team training exercise involving simulated ammunition on or about August 11, 2014. After the exercise had concluded, Mr. Selmani removed his protective equipment. Mr. Selmani's team members, including several of the defendants, then instructed Mr. Selmani to re-enter the training room and subsequently fired thirty to fifty rounds of simulated ammunition from their AR-15 rifles at Mr. Selmani at close range. As a result of this incident, which Mr. Selmani characterizes as "hazing," Mr. Selmani suffered both physical and emotional injuries. He alleges that he "struggled for years from recurring and disturbing nightmares and flashbacks of the traumatic event." ECF No. 37 ¶ 23.

Mr. Selmani resigned from the SPEAR team in 2017, and ultimately reported the incident to his employer in early 2019. He sought counseling at that time, and as a result, he was eventually diagnosed with Post-Traumatic Stress Disorder ("PTSD") and other psychological disorders. In February 2019, Mr. Selmani requested that he be put on paid leave. Instead, purportedly without explanation, the Village placed Mr. Selmani on unpaid leave in May 2019 and subsequently ceased providing employee benefits such as health care. Mr. Selmani complains that he is entitled to a year of salary and other benefits under the Public Employee Disability Act ("PEDA"), 5 Ill. Comp. Stat. 345/1, but that the Village did not initially inform Mr. Selmani that he was eligible for those benefits, and then denied his application for reasons of timeliness and process.

The operative Amended Complaint (the "complaint") was filed in October 2020 after I granted a motion to dismiss the initial complaint. *See* ECF No. 33. The Amended Complaint asserts six causes of action, including both federal claims pursuant to 42 U.S.C. § 1983 and state-law claims. Defendants now move to dismiss the complaint in its entirety.

II.

In Count I, Mr. Selmani brings a claim for due process violations pursuant to 42 U.S.C. § 1983. Specifically, he claims that he was deprived of due process when he was placed on unpaid

3

leave without a pre-decision hearing or other opportunity to be heard.

Due process claims such as Mr. Selmani's present two "basic legal questions": "(1) is there a property or liberty interest protected by due process; and (2) if so, what process is due, and when must that process be made available?" *Bradley v. Vill. of Univ. Park*, 929 F.3d 875, 882 (7th Cir. 2019) (citing *Simpson v. Brown County*, 860 F.3d 1001, 1006 (7th Cir. 2017)). Defendants argue that Mr. Selmani has failed to allege the first element—a protected property interest. "The basic characteristic of a property interest is the continued flow of benefits, which may not be interrupted without an opportunity to be heard." *Ceko v. Martin*, 753 F. Supp. 1418, 1423 (N.D. Ill. 1990). "For public employees, a 'protected property interest in employment can arise from a state statute, regulation, municipal ordinance, or an express or implied contract.'" *Bradley*, 929 F.3d at 882 (citing *Crull v. Sunderman*, 384 F.3d 453, 460 (7th Cir. 2004)).

In his Amended Complaint, Mr. Selmani asserts that the property interest in his employment stems from three independent sources: (1) an Illinois state statute, 65 Ill. Comp. Stat. 5/10-2.1-17, (2) the Collective Bargaining Agreement ("CBA") that was in effect at the time, and (3) the PEDA statute. I turn first to the Illinois state statute, which provides:

> Except as hereinafter provided, no officer or member of the fire or police department of any municipality subject to this Division 2.1 shall be removed or discharged except for cause, upon written charges, and after an opportunity to be heard in his own defense. The hearing shall be as hereinafter provided, unless the employer and the labor organization representing the person have negotiated an alternative or supplemental form of due process based upon impartial arbitration as a term of a collective bargaining agreement. Such bargaining shall be mandatory unless the parties mutually agree otherwise. Any such alternative agreement shall be permissive.

65 Ill. Comp. Stat. Ann. 5/10-2.1-17.

Defendants deny that the statute creates a property interest in Mr. Selmani's position. First, they contend that the statute does not apply by its terms because Mr. Selmani was placed on unpaid leave, not "removed" or "discharged." It is true that the statute does not provide any explicit protections regarding leaves or suspensions. *See Spring-Weber v. City of Chicago*, No. 16 C 8097, 2017 WL 1316267, at *5 (N.D. Ill. Apr. 10, 2017) (contrasting 65 Ill. Comp. Stat. 5/10-2.1-17 with another statute explicitly referring to suspensions). However, "[e]ven in the absence of explicit statutory protection, . . . removal or suspension—even a

5

suspension with pay—from a statutorily protected employment position 'might produce . . . economic effects that trigger the protection of the Due Process Clause.'" *Luellen v. City of East Chicago*, 350 F.3d 604, 613-14 (7th Cir. 2003) (citing *Townsend v. Vallas*, 256 F.3d 661, 676 (7th Cir. 2001)). In such cases, the due process clause is implicated where "the property lost due to the suspension is so integral to the employee's position such that loss of the property could be deemed a loss of the employee's position." *Spring-Weber*, 2017 WL 1316267, at *5.

In *Ceko v. Martin*, for example, a 911 police dispatcher complained that he was deprived of due process when he was placed on an unpaid medical leave of absence without an opportunity to contest the decision. 753 F. Supp. at 1421. The dispatcher argued that his property right arose from another Illinois statute that provided that a police employee could not be "removed or discharged, or suspended . . . except for cause." *Id.* at 1422. The court found that while the dispatcher was not suspended or removed "in the strict sense of the term," his due process rights were implicated because "he was effectively deprived of his salary." *Id.* at 1422-23. The court explained: "The interest in continued employment would be hollow indeed if it did not secure payment, the primary benefit of being employed." *Id.* at 1423.

Here, just like the plaintiff in *Ceko*, Mr. Selmani was placed on unpaid leave. The denial of Mr. Selmani's salary constituted

6

an effective denial of his employment, which is protected under 65 Ill. Comp. Stat. 5/10-2.1-17. Accordingly, although Mr. Selmani was placed on unpaid leave rather than removed or terminated, he has adequately alleged a protected property interest. *See also Spring-Weber*, 2017 WL 1316267, at *5 (fire paramedic placed on involuntary medical leave had property interest in employment under 65 Ill. Comp. Stat. 5/10-2.1-17 despite statute's failure to mention suspension or leave); *Bauchard v. Martin*, No. 91 C 7839, 1993 WL 79259, at *4 (N.D. Ill. Mar. 16, 1993) (police officer placed on involuntary leave of absence had protected property interest in employment). Because I conclude that Mr. Selmani alleged a property interest stemming from the Illinois statute, I need not consider whether the CBA or the PEDA statute also creates a property interest.

Defendants also argue that applicable CBA includes a grievance procedure that effectively supersedes the Illinois statute such that the statute does not provide Mr. Selmani with a protectable property interest. Defendants point to the statutory language: "[N]o officer or member of the . . . police department . . . shall be removed or discharged except for cause, upon written charges, and after an opportunity to be heard in his own defense. The hearing shall be as hereinafter provided, *unless the employer and the labor organization representing the person have negotiated an alternative or supplemental form of due process based upon*

7

*impartial arbitration as a term of a collective bargaining agreement.*" 65 Ill. Comp. Stat. 5/10-2.1-17 (emphasis added). By its terms, however, the statute simply provides that labor organizations may negotiate for an arbitration proceeding instead of a hearing in the form specified by the statute. The provision does not, as Defendants seem to contend, provide that where a CBA includes a grievance procedure, there is no longer any need to remove police officers "for cause, upon written charges, and after an opportunity to be heard." *See Parisi v. Jenkins*, 603 N.E.2d 566, 572-73 (Ill. App. Ct. 1992) (labor agreement provision allowing for termination without an opportunity to be heard was "clearly inconsistent with section 10-2.1-17," which controlled). Accordingly, the CBA here does not and cannot abrogate the property interest afforded by the statute.

Finally, Defendants argue that Count I should be dismissed because Mr. Selmani has adequate state-law remedies for the alleged due process deprivations, including the right to challenge by way of a common-law writ of certiorari or writ of mandamus. Mr. Selmani correctly notes, however, that this argument is foreclosed by the Seventh Circuit's recent decision in *Bradley v. Village of University Park*, which held in the context of procedural due process claims that "the simultaneous violation of both federal and state law does not provide defendants with a defense to

8

liability, nor does the existence of a state remedy bar aggrieved plaintiffs from pursuing federal claims." 929 F.3d at 884.

Because I find that Mr. Selmani has adequately alleged a protected property interest in his position, I decline to dismiss Count I.

### III.

In Count II, Mr. Selmani brings a *Monell* claim under 42 U.S.C. § 1983. *Monell* stands for the proposition that "[w]hile a municipality is not vicariously liable under § 1983 for the acts of its employees, a constitutional deprivation may be attributable to a municipality 'when execution of a government's policy or custom . . . inflicts the injury.'" *Montano v. City of Chicago*, 535 F.3d 558, 570 (7th Cir. 2008) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). In order to maintain a *Monell* claim against a municipality, a plaintiff must establish either "(1) an express policy that, when enforced, causes a constitutional deprivation; or (2) that the constitutional injury was caused by a person with final policymaking authority." *Id.* (citing *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002)).

Defendants argue that Mr. Selmani's *Monell* claim must be dismissed because he does not allege an underlying constitutional deprivation. *See Houskins v. Sheahan*, 549 F.3d 480, 493-94 (7th Cir. 2008) (*Monell* claim failed where plaintiff did not "establish that she was deprived of a constitutional right"); *King v. East*

9

*St. Louis School Dist. 189*, 496 F.3d 812, 817 (7th Cir. 2007) ("It is well established that there can be no municipal liability based on an official policy under *Monell* if the policy did not result in a violation of [the plaintiff's] constitutional rights."). However, as noted above, Mr. Selmani has adequately alleged a due process violation. Accordingly, I cannot dismiss the *Monell* claim on that basis.

Defendants also move to strike Count II's prayer for punitive damages against Defendant Kevin Wallace, the President of the Village, and Defendant Patrick Ullrich, the Police Chief of the Village. In that respect, Defendants' motion is granted. "[P]unitive damages are not recoverable under a *Monell* claim." *Awalt v. Marketti*, No. 11 C 6142, 2012 WL 1161500, at *12 (N.D. Ill. Apr. 9, 2012) (citing *Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981)); *see also Brigham v. Coles Cty.*, No. 19-CV-1300, 2020 WL 6946447, at *7 (C.D. Ill. Nov. 25, 2020) (striking prayer for punitive damages against individuals for *Monell* claims).[1]

IV.

Both Count I and Count II were asserted against the Village, Mr. Wallace, and Mr. Ullrich. Defendants assert that to the extent

---

[1] I need not strike the prayer for punitive damages in Count I as Mr. Selmani has clarified that those damages are sought from Defendants Ullrich and Wallace only in their individual capacities, rather than in their official capacities, such that *Monell* is not implicated. *See* ECF No. 47 at 19; ECF No. 48 at 13.

10

Mr. Wallace and Mr. Ullrich were sued in their official capacities, those claims should be dismissed as duplicative of the claims against the Village. I agree. Official-capacity suits are simply "another way of pleading an action against an entity of which an officer is an agent." *Monell*, 436 U.S. at 690 n.55. Accordingly, because the Village has also been named as a defendant, the claims against Mr. Ullrich and Mr. Wallace are duplicative and are properly dismissed. *See Colon v. McLaughlin*, No. 16-cv-10581, 2018 WL 4898880, at *2 n.2 (N.D. Ill. Oct. 9, 2018).

V.

In his third claim, Mr. Selmani seeks a declaratory judgment that Defendants have violated PEDA, 5 Ill. Comp. Stat. 345/1. That Act provides in relevant part:

> Whenever an eligible employee suffers any injury in the line of duty which causes him to be unable to perform his duties, he shall continue to be paid by the employing public entity on the same basis as he was paid before the injury . . . during the time he is unable to perform his duties due to the result of the injury, but not longer than one year in relation to the same injury . . . .

5 Ill. Comp. Stat. 345/1(b).

Defendants argue that because the statute says that an eligible employee should "*continue* to be paid . . . on the same

11

basis as he was paid *before the injury*," it does not apply to cases such as Mr. Selmani's, where the injured employee claims to be unable to perform his job duties only some time after the injury took place. I disagree. Illinois courts have repeatedly held that PEDA entitles an employee to a year of pay "during the time he is unable to perform his duties," even if the incapacity does not occur in the calendar year following the injury. *See Bahr v. Bartlett Fire Protection Dist.*, 889 N.E.2d 760, 765–66 (Ill. App. Ct. 2008); *Albee v. City of Bloomington*, 849 N.E.2d 1094, 1097 (Ill. App. Ct. 2006).[2] The statute's use of the word "continue" does not suggest otherwise, as the employee is meant to continue to be paid after he is incapacitated, and neither does the statute's requirement that the benefits be paid at the employee's compensation rate "before the injury." *See Bahr*, 889 N.E.2d at 764.

---

[2] Defendants attempt to distinguish *Albee* and *Bahr* because the plaintiffs in those cases experienced an initial period of incapacity immediately after the injury, returned to work, and then experienced a subsequent period of incapacity related to the initial injury. *Bahr*, 889 N.E.2d at 762; *Albee*, 849 N.E.2d at 1096. I am not convinced, however, that the fact that Mr. Selmani did not take time off of work immediately after the injury meaningfully distinguishes his case, especially given the courts' reasoning that a "use-it or lose-it" interpretation of the statute "is contrary to the legislative intent as evidenced by the statute's plain language." *Bahr*, 899 N.E.2d at 766; *see also Albee*, 849 N.E.2d at 1097 ("[A]n officer who is able to return to work should not be given an incentive not to return, with the 'use-it-or-lose-it' argument that the year of continuing compensation begins to run immediately.").

12

Defendants also contend that Mr. Selmani's PEDA claim is barred by the five-year statute of limitations. *See* 735 Ill. Comp. Stat. 5/13-205. They argue that the cause of action accrued at the time of the 2014 injury, especially given that Mr. Selmani alleges he experienced immediate symptoms, *see, e.g.*, ECF No. 37 ¶ 23. But a limitations period generally "begins to run when facts exist that authorize one party to maintain an action against another." *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 85 (Ill. 2003). PEDA requires not just that an employee suffer an injury, but that he suffer an injury that "causes him to be unable to perform his duties," 5 Ill. Comp. Stat. 345/1(b). Mr. Selmani alleges that it was not until 2019 that he had to miss work as a result of his injury. *See* ECF No. 37 ¶ 90. Accordingly, I conclude that Mr. Selmani plausibly alleged his claim accrued at the time he became incapacitated in 2019. Claim III may proceed.

## VI.

Mr. Selmani next asserts, in Count IV, an Illinois state law claim for a writ of certiorari, seeking judicial review of the Village's denial of Mr. Selmani's PEDA benefits.[3]

"The common law writ of *certiorari* provides a means whereby a party who has no avenue of appeal or direct review may obtain

---

[3] Mr. Selmani does not appear to seek judicial review of any alleged due process violations in this count; accordingly, I need not consider Defendants' arguments on that point. *See* ECF No. 44 at 12.

13

limited review over action by a court or other tribunal exercising quasi-judicial functions." *Reichert v. Ct. of Claims*, 786 N.E.2d 174, 177 (Ill. 2003). "The purpose of *certiorari* review is to have the entire record of the inferior tribunal brought before the court to determine, from the record alone, whether the tribunal proceeded according to applicable law." *Id.*

Defendants argue that a writ of certiorari would be improper here because there was no underlying quasi-judicial proceeding for this court to review. I decline, however, to dismiss the claim on that basis. There is no absolute requirement that an administrative hearing precede a petition for a writ of certiorari. *See Meylor v. Boys*, 427 N.E.2d 1023, 1024-25 (Ill. App. Ct. 1981). Mr. Selmani has asserted that there is a "record of proceedings . . . pertaining to entry of [the] decision" to deny him PEDA benefits, ECF No. 37 ¶ 108, and, if that is true, the court can determine from the record "whether there is any evidence fairly tending to support the order [or whether] it is palpably or manifestly against the weight of the evidence." *Jones v. Lazerson*, 561 N.E.2d 151, 154 (Ill. App. Ct. 1990) (citing *Nowicki v. Evanston Fair Hous. Review Bd.*, 338 N.E.2d 186, 188 (Ill. 1975)). Accordingly, I decline to dismiss Count IV.

## VII.

In Count V, Mr. Selmani asserts a claim under the Attorneys Fees in Wage Actions Act (the "Fee Act"), 705 Ill. Comp. Stat.

225/1, seeking attorneys' fees in connection with Mr. Selmani's "wages earned and due and owing" in the amount of $80,639.20. That figure corresponds to the benefit Mr. Selmani claims he is owed under PEDA for the period of May 22, 2019 to May 22, 2020. ECF No. 37 Ex. B.

The Fee Act provides, in its entirety:

> Whenever a mechanic, artisan, miner, laborer, servant or employee brings an action for wages earned and due and owing according to the terms of the employment, and establishes by the decision of the court or jury that the amount for which he or she has brought the action is justly due and owing, and that a demand was made in writing at least 3 days before the action was brought, for a sum not exceeding the amount so found due and owing, then the court shall allow to the plaintiff a reasonable attorney fee of not less than $10, in addition to the amount found due and owing for wages, to be taxed as costs of the action.

705 Ill. Comp. Stat. 225/1.

Defendants first argue that Mr. Selmani cannot recover attorneys' fees because PEDA benefits are statutory disability benefits rather than "wages earned and due and owing" for work actually performed as required by the Fee Act. But Illinois courts do not interpret "wages" so narrowly; indeed, fees have been

15

awarded under the Fee Act where the plaintiff sought PEDA benefits. *See Bahr*, 889 N.E.2d at 768–69; *cf. Vendetti v. Compass Env't, Inc.*, No. 06 C 3556, 2008 WL 1774983, at *7 (N.D. Ill. Apr. 16, 2008) ("[T]here is nothing in the Fee Act limiting the definition of 'wages' to include only compensation for work actually performed."). Accordingly, I decline to conclude that PEDA benefits are not "wages" under the Fee Act.

Second, Defendants contend that defects in the plaintiff's demand letter foreclose his claim under the Fee Act. They argue that because the demand letter, which was sent on March 20, 2020, sought benefits continuing to the then-future date of May 22, 2020 (one year after Mr. Selmani stopped working), it was not a demand for wages then "due and owing," and accordingly did not comply with the Fee Act's demand requirements. *See* ECF No. 44 at 14. When read in the context of the prior clause, however, the Fee Act requires only that the demand be made for a sum not exceeding the amount "found due and owing" "*by the decision of the court or jury*." 705 Ill. Comp. Stat. 225/1 (emphasis added). It does not impose a requirement that the plaintiff request only benefits due at the time of the demand; rather, it establishes the demand amount as a threshold above which the factfinder at an eventual trial must award damages in order for a plaintiff to be eligible to collect fees. *See, e.g.*, *Catania v. Local 4250/5050 of the Communic'ns Workers of Am.*, 834 N.E.2d 966, 974 (Ill. App. Ct.

16

2005) ("A plaintiff can only recover attorneys' fees under the statute if the amount recovered at trial is equal to or greater than the amount contained in the pre-trial demand letter."). In other words, the time when wages must be found "due and owing" is at trial, not at the time the demand letter is sent. Accordingly, Count V may proceed.

## VIII.

In Count VI, Mr. Selmani asserts a claim for intentional infliction of emotional distress based on the conduct of three individual defendants—Defendants Steven Winterstein, Will Naydenoff, and Michael Rummell—who were present during the SPEAR team incident on August 11, 2014. Defendants move to dismiss Count VIII on the grounds that it is untimely under the applicable one-year statute of limitations. *See* 745 Ill. Comp. Stat. 10/8-101(a).

In Illinois, under the discovery rule, "a cause of action accrues, and the limitations period begins to run, when the party seeking relief knows or reasonably should know of an injury and that it was wrongfully caused." *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 770 N.E.2d 177, 192 (Ill. 2002). Mr. Selmani argues that it was not until he was diagnosed with PTSD in June 2019 and it was attributed to the SPEAR team incident that he first understood his injury's cause. ECF No. 47 at 17. But that is inconsistent with what he alleged in his complaint. Mr. Selmani pleaded that after the injury in 2014, he "struggled for years

17

from recurring and disturbing *nightmares and flashbacks of the traumatic event* of being a target of his fellow officers, of losing control, and causing an intense and persisten[t] sense of fear, humiliation, and shame." ECF No. 37 ¶ 23 (emphasis added). After years of experiencing psychological symptoms centered around the SPEAR team incident, it is implausible to suggest that Mr. Selmani did not know or should not have known that his symptoms were caused by the event. That Mr. Selmani consulted a psychiatrist years later and received a formal diagnosis is inapposite. *See, e.g.*, *Hertel v. Sullivan*, 633 N.E.2d 36, 41 (Ill. App. Ct. 1994) (that plaintiff consulted with mental health specialist who helped her understand cause of injuries years after conclusion of sexually abusive relationship with priest did not toll statute of limitations under discovery rule). Nor is it significant that Mr. Selmani's symptoms may have worsened over time. *See Gen. Auto Serv. Station v. City of Chicago*, No. 00 C 0368, 2004 WL 442636, at *8 (N.D. Ill. Mar. 9, 2004) ("[A] plaintiff's cause of action accrues at the time its interest is invaded; the mere fact that the extent of its damages is not immediately ascertainable does not postpone the accrual of a plaintiff's claim."). Accordingly, because the claim is untimely under the applicable statute of limitations, Count VI is dismissed.

18

X.

For the foregoing reasons, Defendants' motion to dismiss is granted as to Count VI and denied as to Counts III-V. Counts I and II survive in major part, but are dismissed to the extent they assert claims against Defendants Ullrich and Wallace in their official capacities. The prayer for punitive damages in Count II is stricken.

**ENTER ORDER:**

**Elaine E. Bucklo**
United States District Judge

Dated: January 27, 2021